UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-244-MOC-DCK
3:19-cv-257-MOC-DSC

| | |
|---|---|
| STEPHANIE JOHNSON, individually and on behalf of T.S., | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| CHARLOTTE-MECKLENBURG SCHOOLS BOARD OF EDUC., | ) ) ) ) |
| Defendant. | ) ) |
| STEPHANIE JOHNSON, individually and on behalf of A.J., | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| CHARLOTTE-MECKLENBURG SCHOOLS BOARD OF EDUC., | ) ) ) **ORDER** |
| Defendant. | ) ) |

**THIS MATTER** comes before the Court on the following motions: a Motion to Dismiss, filed by Defendant Charlotte-Mecklenburg Schools Board of Education, (Doc. No. 34), and on the parties' cross motions for summary judgment, (Doc. Nos. 29, 31).

I.     **BACKGROUND**

A.J. and T.S. are former students of Renaissance West Academy, an elementary school in

the Charlotte-Mecklenburg school district.  On August 28, 2018, and August 31, 2018, Plaintiff filed due process petitions for both A.J. and T.S., alleging various denials of a free and appropriate education ("FAPE") and violations of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA") by Defendant Charlotte Mecklenburg Schools Board of Education ("CMS").  (A.J. R. pp. 97-104; T.S. R. p. 172).  CMS filed responses denying all allegations in the underlying due process petitions and litigation commenced in the administrative phase below at the Office of Administrative Hearings ("OAH").  (A.J. R. pp. 90-96; T.S. R. pp. 189-96).

In A.J., CMS received a request for an IEE after the expiration of the one-year statute of limitations.  (Aff. Morris, A.J. R. pp. 195-96, ¶¶ 9-10, Ex. A).  CMS notified Plaintiff that the request for an IEE was not timely under the statute of limitations but offered to provide a reevaluation.  (Id.).  Subsequently, A.J.'s IEP team met in November of 2018 and agreed to conduct a re-evaluation.  (Aff. Ross, A.J. R. pp. 200-56, ¶¶ 12 15, Exs. A, D, E, F).

In T.S., CMS also received a request for an IEE but at the time of receipt it had not conducted an evaluation of T.S.  (Morris Aff., T.S. R. pp. 9-10, ¶¶ 9-10, Ex. A).  After the commencement of litigation in both cases at OAH, CMS held IEP meetings for both A.J. and T.S.  As to A.J., on November 2, 2018, A.J.'s IEP team met to (a) update A.J.'s present level of performance regarding her math skills, (b) update A.J.'s present level of performance and goals regarding behavior, (c) continue to provide A.J. with the same special education services, time, and locations as contained in her May 2018 IEP, and (d) continue to provide speech/language services through a Related Services Support Description ("RSSD").  (Aff. Ross, A.J. R. p. 202, ¶ 12, Ex. A, E).  In addition, the IEP team determined that a re-evaluation was needed for A.J.  (Aff. Ross, A.J. R. p. 202, ¶ 13, Ex. D).  Plaintiff provided consent for CMS to evaluate A.J. and

2

a new IEP was implemented effective November 7, 2018. (Aff. Ross, A.J. R. p. 202, ¶¶ 14-15, Ex. D-F).

As to T.S., on November 2, 2018, CMS reconvened an IEP meeting to determine if she should be evaluated for eligibility for special education and related services. (Aff. Ross, T.S. R. p. 109, ¶ 15). At the meeting, the IEP team determined that there was sufficient evidence to suspect a disability and that it was appropriate to conduct formal evaluations to determine eligibility for special education services. (Aff. Ross, T.S. R. p. 109, ¶ 16). The IEP team's decision was based primarily on medical diagnoses, inconsistent response to interventions, and current social/emotional concerns. (Aff. Ross, T.S. R. p. 109, ¶ 16, Ex. F). The IEP team ordered multiple evaluations to be conducted. (Aff. Ross, T.S. R. p. 109, ¶ 15, Ex. F).

Plaintiff did not sign the Consent for Evaluation/Reevaluation form at the November 2, 2018 meeting, but informed the Team that she would take the form home to review. (Aff. Ross, T.S. R. p. 109, ¶ 17). Plaintiff did not return the signed Consent to Evaluate form for T.S. until November 28, 2018. (Aff. Ross, T.S. R. p. 109, ¶ 17, Ex. E). Plaintiff did not return the parent rating scales or the social history; both responses are needed to fully evaluate T.S. (Aff. Ross, T.S. R. p. 109, ¶ 17).

Subsequently, the parties entered into a Consent Scheduling Order and the Administrative Law Judge ("ALJ") held a summary judgment hearing in both cases. (A.J. R. pp. 2-3, 4-89; T.S. R. pp. 79-80). At the summary judgment hearing, the ALJ found that Plaintiff failed to raise a genuine issue of material fact as to any of the claims in both A.J. and T.S. and dismissed both cases with prejudice. (A.J. R. pp. 108-10; T.S. R. pp. 81-84). As an alternative basis for relief, the ALJ in both cases found that all claims were moot. (A.J. R. pp. 108-10; T.S. R. pp. 81-84).

Thereafter, a State Hearing Review Officer ("SHRO") for the North Carolina Department

of Public Instruction ("DPI") conducted an independent review of the ALJ's Decision in A.J. and T.S. (A.J. Supp. to Admin Record, pp. 1-8; T.S. R. pp. 1-5). The SHRO affirmed the ALJ's grant of summary judgment in its entirety for A.J. and reversed, in part, the ALJ's grant of summary judgment in T.S. (A.J. Supp. to Admin Record, pp. 1-8; T.S. R. pp. 1-5). The SHRO did not address the mootness issue in either case.

On June 3, 2019, Plaintiff filed federal lawsuits in this Court challenging the findings of the ALJ and SHROs in both cases. The Court consolidated the cases on January 7, 2020. In both cases, Plaintiff's federal complaints seek only non-monetary relief, in the form of a remand back to the ALJ for an evidentiary hearing, rather than monetary relief, such as compensatory education or reimbursement for private educational services. On September 3, 2019, an attorney for Plaintiff confirmed that both A.J. and T.S. were enrolled in the Craven County Schools, another local education agency in North Carolina located in Craven County. (Aff. Clark, Ex. A).

## II.    STANDARD OF REVIEW

Under Rule 12(b)(1), the defendant may file a motion to dismiss based on a lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Where a defendant files such motion, the plaintiff bears the burden to prove that subject matter jurisdiction exists. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Additionally, a motion to dismiss for lack of subject matter jurisdiction may be brought on the grounds that the complaint fails to allege sufficient facts to invoke the court's jurisdiction and, when made on those grounds, all the facts asserted in the complaint are presumed to be true. Id.

## III.   DISCUSSION

Federal courts have limited subject-matter jurisdiction and "no jurisdiction to decide moot cases because of the case or controversy requirement of Article III of the Constitution."

4

Virginia ex rel. Coleman v. Califano, 631 F.2d 324, 326 (4th Cir. 1980). Pursuant to Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3); see Scott v. Wells Fargo Home Mortg., Inc., 326 F. Supp. 2d 709, 719 (E.D. Va. 2003) ("The Court must raise issues of subject matter jurisdiction sua sponte if it appears at any time that further exercise of [the] Court's jurisdiction may be improper.").

The Supreme Court has held that the case or controversy requirement is not satisfied, "when the question sought to be adjudicated has been mooted by subsequent developments…." Flast v. Cohen, 392 U.S. 83, 95 (1968). To raise a cognizable claim in a federal court, a lawsuit must be:

> a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. However, moot questions require no answer. Mootness is a jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions; our impotence to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.

North Carolina v. Rice, 404 U.S. 244, 246 (1971) (quotations and citations omitted).

In the special education context, a claim that a school district failed to provide a student FAPE will be mooted upon the parties' correction of the alleged violation, so long as there is not a reasonable likelihood that the violation will reoccur. See generally Honig v. Doe, 484 U.S. 305, 317-19 (1988). When requested testing has been completed and a prior proposed IEP is replaced by a subsequent IEP, there is no viable controversy and the court does not have jurisdiction due to the parties lacking a legally cognizable interest in the outcome. See Sch. Bd. of City of Norfolk v. Brown, 769 F. Supp. 2d 928, 953 (E.D. Va. 2010). Such a claim is moot unless it is "capable of repetition, yet evading review." Id.

5

In support of the motion to dismiss, Defendant asserts that during the pendency of both lawsuits in federal court, A.J. and T.S. were withdrawn from CMS and enrolled in the Craven County Schools, another local education agency in North Carolina. (Aff. Clark, Ex. A, ¶¶ 5-8, Exs. 1-3). Defendant contends that these voluntary actions by Plaintiff deprive this Court of subject-matter jurisdiction. The Court agrees. Federal courts have regularly found that when a student moves out of a school district during the pendency of an IDEA claim in federal court, the underlying claims are moot if the plaintiff has not sought monetary damages. Cf. Wagner v. Bd. of Educ. of Montgomery Cty., 340 F. Supp. 2d 603, 608 (D. Md. 2004) (prospective relief was moot in part because students had moved out-of-state) with Z.G. v. Pamlico Cty. Pub. Schs. Bd. of Educ., 744 Fed. App'x 769, 779 n.15 (4th Cir. 2018) (unpublished) (parent's IDEA claims not moot where parent sought monetary relief in federal Complaint), and Brown v. Bartholomew Consol. Sch. Corp., 442 F.3d 588, 597-98 (7th Cir. 2006) (where parents' move to a new school district rendered IDEA case moot, noting that a claim for damages in federal district court was not a live controversy because the plaintiff parents failed to articulate a claim for monetary relief (i.e., compensatory education) or reimbursement directly in their federal complaint). Here, Plaintiff's federal complaints in both cases merely request nonmonetary relief in the form of a remand, not compensatory education or reimbursement for A.J.'s or T.S.'s educational services.[1] (A.J. Compl., p. 7.; T.S. Compl., p. 7). Since Plaintiff chose not to pursue a claim for monetary relief in this Court, there is no federal subject matter jurisdiction in this Court, and no practical

---

[1] To the extent that Plaintiff argued at the hearing on the motion to dismiss that she, in fact, did seek monetary damages in the form of reimbursement payments, the Court disagrees. Both federal complaints sought the following forms of relief only: an "order annulling the decision of the SRO dismissing the due process complaint"; an "order remanding this matter for an evidentiary hearing before the ALJ"; "award to the plaintiffs costs, expenses and attorney's fees"; and "grant such other and further relief as the Court deems just and proper."

6

reason to supply an advisory opinion that will not alter the parties' legal relationship.

An exception to the general rule of mootness is "wrongs capable of repetition, yet evading review." Murphy v. Hunt, 455 U.S. 478, 482 (1982) (per curiam). This exception applies only in "exceptional situations.'" Incumaa v. Ozmint, 507 F.3d 281, 289 (4th Cir. 2007) (quoting Los Angeles v. Lyons, 461 U.S. 95, 109 (1983)). Two circumstances must be "simultaneously present" for the exception to apply: "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 481 (1990) (quoting Murphy, 455 U.S. at 482). For there to be a "reasonable expectation" that Plaintiff will be subjected to the same action again, that event must be a "demonstrated probability." Murphy, 455 U.S. at 482.

The mere possibility of IEP disputes exist in the case of every disabled student and for whom a new IEP must be prepared annually. "The fact that a plaintiff has repeatedly challenged each IEP developed does not establish the requisite reasonable expectation of repetition." V.M. v. N. Colonie Cent. Sch. Dist., 954 F. Supp. 2d 102, 120 (N.D.N.Y. 2013) (internal quotation omitted). Courts have consistently held that a party's history of challenging the validity of an IEP from year to year is not sufficient to show a reasonable expectation that the same conduct will recur. See B.J.S. ex rel. N.S. v. State Educ. Dep't/Univ. of the State of N.Y., 815 F. Supp. 2d 601, 613 (W.D.N.Y. 2011).

Here, A.J. and T.S. are enrolled in the Craven County Schools, not CMS. (Aff. Clark, Ex. A, ¶¶ 5-8, Exs. 1-3). Furthermore, Plaintiff has presented nothing to the Court to show that she intends to re-enroll A.J. or T.S. in CMS, or that Plaintiff even still resides in the Charlotte Mecklenburg school district. (Aff. Clark, Ex. A, ¶ 9, Ex. 3). Thus, there is no reasonable

7

Case 3:19-cv-00244-MOC-DSC   Document 44   Filed 07/10/20   Page 7 of 9

expectation that Plaintiff would be subjected to the same alleged wrongful actions by CMS again.

Additionally, the parties voluntarily altered their legal relationship through the IEP process in November of 2018. These actions resolved the substantive issues in the underlying claims. First, as to A.J., the record establishes that her IEP team met on November 2, 2018, and agreed to conduct a re-evaluation. (Aff. Ross, A.J. R. p. 202, ¶ 13, Ex. D). Plaintiff provided consent for CMS to evaluate A.J. and a new IEP was implemented effective November 7, 2018. (Aff. Ross, A.J. R. p. 202, ¶¶ 14-15, Ex. D-F). These actions by A.J.'s IEP team and Plaintiff resolved any viable underlying dispute by Plaintiff. As to T.S., the record establishes that an IEP team held a referral meeting in November of 2018 and agreed to evaluate T.S. in all suspected areas of eligibility. (Aff. Ross, T.S. R. p.109, ¶¶ 15-16). Plaintiff signed the Consent to Evaluate form for T.S. (Aff. Ross, T.S. R p.109, ¶ 17, Ex. E). These actions by the parties resolved any viable underlying dispute by Plaintiff.[2]

Thus, the cases at bar are moot and do not present an "exceptional situation" in which the "wrongs capable of repetition yet evading review" exception to the mootness doctrine applies. Accordingly, this Court lacks subject-matter jurisdiction and will dismiss these cases as moot pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[3]

---

[2] Plaintiff's opinion that CMS failed to cooperate with her is unsupported by the record and does not present a live controversy for this Court. Rather, the fact that Plaintiff never returned the parent rating scales or the social history (responses needed to fully evaluate T.S.) is evidence that Plaintiff's own conduct unnecessarily delayed IEP development for T.S. (Aff. Ross, R. 109, R. p. 109, ¶ 17). See B.J.S., 815 F. Supp. 2d at 613 ("a party may not, by its own conduct, create the appearance of an actual controversy to avoid mootness."). Ultimately, any speculative disputes in the IEP process since November of 2018 are not before this Court and could only be challenged by Plaintiff in a separate due process proceeding, if at all.
[3] As an alternative to dismissing all claims as moot, Defendant argues that the Court must dismiss Claim 9 in A.J. as moot and Claims 3, 4, 6 and 7 in T.S. as moot. Because the Court

8

**IT IS THEREFORE ORDERED** that:

(1) Defendant's Motion to Dismiss, (Doc. No. 34), is **GRANTED** and this matter is dismissed. To this extent, the parties' pending summary judgment motions, (Doc. Nos. 29, 31), are **DENIED** as moot.

(2) This action is dismissed with prejudice.

Signed: July 10, 2020

Max O. Cogburn Jr.
United States District Judge

---

finds that all of Plaintiff's claims must be dismissed as moot, the Court does not consider Defendant's alternative arguments.